IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXANDRIA D. FISHER *et al.*, | ) |
| Plaintiffs | ) |
| | ) Civil Action No.: 10 C 2381 |
| v. | ) |
| | ) Suzanne B. Conlon, Judge |
| BRILLIANT WORLD INTERNATIONAL, *et al.*, | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

Alexandria Fisher claims she was injured while riding on a Wego Kite Tube pulled behind a power boat. She sues Overton's, Inc., the tube's distributor, for negligence and product liability.[1] Overton's, Inc. moves for a determination that the law of Michigan, where the injury occurred, applies to the issues of liability and damages. Fisher opposes the motion and contends the law of Illinois, her domicile and the place where the tube was purchased, applies.

### I. Background

The following facts are taken from the parties' briefs and are uncontested for purposes of this motion. Fisher, then 16 years old, spent the 2006 Memorial Day weekend with a friend's family, the Massaros, at their second home in Michigan. Fisher and the Massaros are Illinois

---

[1] The other named defendant, Brilliant Wide International, Ltd., did not answer the complaint or file an appearance after summons was issued, and a technical default was entered against it. *See* Dkt. No. 29. Alexandria Fisher's mother, Laura Fisher, sues defendants for her daughter's medical expenses under the Family Expense Act, 750 ILCS 65 *et seq.* This count is not at issue in this motion. All references to "Fisher" refer to Alexandria.

1

residents. About a month earlier, Dr. James Massaro purchased a Wego Kite Tube over the phone from Overton's, Inc., a North Carolina corporation with its principal place of business in North Carolina. The tube is designed to be pulled behind a powerboat while someone rides on top of the tube. Dr. Massaro called Overton's, Inc. from Illinois, had the tube shipped to Illinois, and transported the tube to Michigan where it was inflated and used exclusively. Over the Memorial Day weekend, Fisher was riding the tube behind a ski boat owned and operated by Dr. Massaro while his wife acted as the spotter. Fisher claims that while riding the tube, it suddenly and unexpectedly became violently uncontrollable and she was thrown from the tube. She was injured when she fell into the water.

The tube was designed, manufactured, tested, and marketed by Sportsstuff, Inc., a company incorporated and headquarted in Nebraska. Sportsstuff, Inc. filed for bankruptcy, and Fisher's claims against it were discharged. Brilliant Wide International is a Chinese corporation that manufactured the tube.

## II. Analysis

A federal court applies the choice of law rules of the state where it is located. *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010). Illinois uses the "most significant relationship" test as detailed in the Restatement (Second) of Conflict of Laws ("Restatement"). *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919–20 (Ill. 2007). The first step is to determine whether the two states' laws actually conflict and identify the conflicting issues. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). To resolve a conflict in a tort case, Illinois applies a strong presumption that the law of the state where the injury occurred applies. Restatement § 146; *Townsend*, 879 N.E.2d at 903–04. That

2

presumption may be overcome by showing some other state has a more significant relationship to the particular issue. *Townsend*, 879 N.E.2d at 903. In examining relationships, courts consider the contacts listed in Restatement § 145 in light of the relevant principles found in Restatement § 6. *Id.*

**A. Michigan and Illinois law**

Overton's, Inc. identifies three conflicts between Michigan and Illinois law. First, in Illinois, once a product's design is shown to be defective, all members of the chain of distribution are strictly liable, regardless of fault. *Kirk v. Michael Reese Hosp. & Med. Ctr.*, 513 N.E.2d 387, 394 (Ill. 1987).[2] Under Michigan law, however, Fisher has to prove either that Overton's, Inc. failed to exercise reasonable care, which requires a showing that Overton's, Inc. knew or should have known of the defect, or that it breached an express warranty. M.C.L. § 600.2947(6); *Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 519–20 (6th Cir. 2008) (applying Michigan law); *Kraft v. Dr. Leonard's Healthcare Corp.*, 646 F. Supp.2d 882, 888 (E.D. Mich. 2009) (Ludington, J.) (same).[3]

---

[2] Illinois created an exception that allows a nonmanufacturing defendant, like Overton's Inc., who is otherwise not culpable to be relieved of liability if the product manufacturer is part of the lawsuit and able to satisfy a judgment. 735 ILCS 5/2-621; *Lamkin v. Towner*, 563 N.E.2d 449, 459 (Ill. 1990). But that exception is inapplicable here because Brilliant Wide International defaulted and may be judgment proof, and Fisher's claim against Sportsstuff was discharged in bankruptcy.

[3] The standard used to prove a design defect differs in the two states as well. *Compare Mikolajczyk v. Ford Motor Co.*, 901 N.E.2d 329, 340–53 (Ill. 2008) (allowing both risk-utility test and consumer-expectation test) *with* M.C.L. § 600.2946(2) (statutorily adopting risk-utility test only); *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 183–86 (Mich. 1984) (pre-§ 600.2946 case adopting risk-utility test). However, the parties do not mention this difference, so it is disregarded in the analysis.

3

Second, apportionment of damages among defendants differs in the two states. In Illinois, all defendants are jointly and severally liable for medical expenses, but other damages are apportioned depending on a defendant's fault relative to the named parties. 735 ILCS 5/2-1117. A defendant is jointly and severally liable for non-medical damages if its relative fault is 25% or greater as compared to named parties; otherwise that defendant is only severally liable for its percentage of the damages. *Id.* In Michigan, defendants are only severally liable (subject to exceptions so far inapplicable to this case), and a defendant's relative fault is considered in relation not only to named parties, but also to nonparties. M.C.L. § 600.6304(1).

Finally, Illinois does not cap noneconomic damages, but Michigan statutorily limits noneconomic damages to either $411,300 or $734,500, the latter if the product caused death or permanent loss of a vital bodily function. M.C.L. § 600.2946a; http://www.michigan.gov/documents/nonecolimit101_3658_7.pdf. The complaint seeks an unspecified amount of damages in excess of $100,000, but does not limit the amount of noneconomic damages sought to an amount below the caps. A conflict could exist.

## B. Section 145 Contacts

Section 145 instructs courts to consider

    (a)    the place where the injury occurred,
    (b)    the place where the conduct causing the injury occurred,
    (c)    the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
    (d)    the place where the relationship, if any, between the parties is centered.

The places of the injury and the conduct that caused the injury tend to be the most significant contacts in a tort action. Restatement § 145 cmt. d. ("[S]ubject only to rare exceptions, the local law of the state where conduct and injury occurred will be applied to determine whether the actor

4

satisfied minimum standards of acceptable conduct and whether the interest affected by the actor's conduct was entitled to legal protection").

The first factor favors Michigan. The injury occurred there. Fisher contends the location of the injury was merely fortuitous because the same type of injury just as easily could have happened on an Illinois lake. However, it is uncontested that the tube was used exclusively in Michigan. Cases in which an injury's location was deemed merely fortuitous usually concerned accidents occurring during interstate travel. *E.g., Murphy v. Mancari's Chrysler Plymouth, Inc.*, 94 N.E.2d 233 (Ill. App. Ct. 2011); *Miller v. Hayes*, 600 N.E.2d 34 (Ill. App. Ct. 1992); *Schulze v. Ill. Highway Trans. Co.*, 423 N.E.2d 278 (Ill. App. Ct. 1981). In those cases, the location was fortuitous because the parties were passing through several states, rather than concentrating all their actions in one.

When considering where the injury-causing conduct occurred, the Illinois Supreme Court instructs courts to consider "all conduct from any source contributing to the injury," including affirmative defenses. *Townsend*, 879 N.E.2d at 906. The complaint lists several possible contributing factors to the injury, including negligent design, testing, and manufacturing; failure to warn; failure to recall product; and an unreasonably dangerous product. Overton's, Inc. raises affirmative defenses of Fisher's contributory negligence and assumption of the risk and contributory negligence by the boat's operator and spotter.

Most of this conduct occurred outside Illinois. The tube was probably developed in Nebraska, where Sportsstuff, Inc. is located. It was probably manufactured in China, where Brilliant Wide International is located. Any failure to recall likely would have occurred in

Nebraska or North Carolina. Further, the alleged contributorily negligent acts and assumption of the risk occurred in Michigan.

The Illinois conduct Fisher identifies is Overton's, Inc's failure to warn Dr. Massaro, who purchased the tube over the phone while in Illinois and had it delivered to Illinois. Overton's, Inc.'s failure to warn could be seen to have occurred in Illinois, where it had the opportunity to warn the purchaser of risks, *see Vhora v. Michelin N. Am., Inc.*, No. 98 C 2657, 1999 WL 63682, at *2 (N.D. Ill. Feb. 4, 1999) (Lindberg, J.), or in Michigan, where Fisher could have been informed of the risks. Assuming the failure to warn took place in Illinois, this factor still does not favor Illinois. The place of purchase of a defective product is not as significant as where the design and manufacturing occurred. *See Taylor v. Avid Holdings, LLC*, No. 09 C 5293, 2010 WL 3307374, at *3 (N.D. Ill. Aug. 19, 2010) (Kendall, J.). This is especially true here, where the tube is sold nationwide and was purchased for use in Michigan, and Overton's, Inc. is based outside Illinois. Because the relevant conduct is geographically diverse, this factor is not significant or slightly favors Michigan, where the conduct underlying the affirmative defenses is allegedly concentrated.

At the time of the accident, Fisher lived in Illinois. Now she attends college in Minnesota but is still domiciled in Illinois. Overton's, Inc. is a North Carolina corporation headquarted in North Carolina, and it does business nationwide. Brilliant Wide International is incorporated and located in China. The location of the parties favors Illinois over Michigan because no party has a connection to Michigan.

Overton's, Inc. argues its relationship with Fisher is centered in Michigan because neither Overton's, Inc. nor Brilliant Wide International had a relationship with Fisher before she used the

tube in Michigan. Fisher argues the relevant state is Illinois, where the Massaros purchased the tube from Overton's, Inc. In a negligence and strict liability case, the parties' relationship is "centered in each state where a plaintiff used [the] product." *Townsend*, 879 N.E.2d at 906 (citing *Nichols v. G.D. Searle & Co*, 668 N.E.2d 1101 (Ill. App. Ct. 1996)). Thus, Michigan is the more significant state. However, this factor carries little weight; this factor is important if "the injury was caused by an act done in the course of the relationship." Restatement (Second) of Conflicts § 145 cmt. e. But because Fisher and Overton's, Inc. had no prior relationship, the injury did not arise out of a relationship.

In sum, the place of injury favors Michigan, the place of conduct is geographically diverse, the location of the parties favors Illinois, and the location of the parties' relationship is inconsequential but favors Michigan. These contacts do not suggest Illinois has a more significant relationship to the case than Michigan. However, it is not sufficient to simply count contacts; the contacts must be evaluated in light of the policy concerns listed in § 6. *Townsend*, 879 N.E.2d at 906.

## C. Section 6

The Illinois Supreme Court has singled out three of the factors in § 6 as relevant in tort cases: (1) the relevant policies of the forum; (2) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; and (3) the basic policies underlying the particular field of law. The three issues relevant here are (1) the standard of liability of a nonmanufacturing seller in product liability; (2) apportionment of damages; (3) statutory caps on noneconomic damages.

The product liability laws of both Illinois and Michigan protect consumers. *Townsend*, 879 N.E.2d at 907. However, each has a different approach. Michigan seeks to restrict a seller's liability to its proportional share of fault by requiring a plaintiff to show fault and by eliminating joint liability. *Curry v. Miejer, Inc.*, 780 N.W.2d 603, 608 (Mich. App. Ct. 2009); *Smiley v. Corrigan*, 638 N.W.2d 151, 152 (Mich. App. Ct. 2001). Requiring fault by the seller was designed to channel claims directly against the manufacturer, who usually indemnifies the seller, thereby reducing the seller's unnecessary legal costs and insurance premiums. *Curry*, 780 N.W.2d at 608 n.4. The manufacturer is in the best position to prevent harm, so holding manufacturers liable was thought to encourage product safety. *Id.* Illinois's policy, on the other hand, places the risk of an insolvent manufacturer on the seller, rather than the injured party, on the theory that the injured party should be made whole and the seller's relationship with the manufacturer gives the seller leverage to induce change. *Crowe v. Public Bldg. Comm'n of Chi.*, 383 N.E.2d 951, 953–54 (Ill. 1978); *Murphy v. Mancari's Chrysler Plymouth, Inc.*, 887 N.E.2d 569 (Ill. App. Ct. 2008). Although the ends are the same—safer products—Michigan's law seems more focused on ensuring fairness for defendants, while Illinois focuses on ensuring a full recovery for plaintiffs.

The policies behind damages in the two states are similar. Neither state limits economic damages; Michigan's cap is limited to noneconomic damages. One purpose of Michigan's cap is to prevent "unfair and excessive judgments against manufacturers and sellers." *Cardona v. H. Schirp GMBH & Co. KG*, No. 219651, 2000 WL 33415984, at *3 (Mich. App. Ct. July 28, 2000). In Illinois, an unfair and excessive judgment is policed by the judiciary through

*remittitur*. *Best v. Taylor Machine Works*, 689 N.E.2d 1057, 1078–80 (Ill. 1997). Both states are concerned with preventing excessive judgments.

Illinois's interest in the case consists mainly of protecting and compensating an injured resident. Illinois also has an interest in ensuring safe products are sold within the state. However, this interest is slight because the tube at issue was not intended to be used in Illinois. Michigan has an interest in deterring the use of defective products within its borders and regulating conduct of people in the state. Michigan also has an interest in compensating victims who are injured in Michigan.

Fisher argues Illinois law is more favorable to plaintiffs and because she is an Illinois resident, Illinois law should apply to protect her. She argues Michigan has a lower interest in protecting nonresidents. However, Fisher narrowly focused on the residency of the parties and overlooks Michigan's strong interest in regulating conduct that occurs within its borders. *See Green v. Goodyear Dunlop Tires N. Am., Ltd.*, Civil No. 08-472-GPM, 2010 WL 747501, at *2 (S.D. Ill. Mar. 2, 2010) (Murphy, J.) ("Missouri has an interest in deterring and punishing tortious conduct that causes injury within its boundaries and in compensating parties injured there that is at least as strong as the interest of Illinois in protecting its residents"). Michigan law is presumed to apply, and Illinois's interest in protecting its residents is insufficient to overcome that strong presumption.

### III. Conclusion

Michigan law supplies the substantive standards at to Count I for negligence and Count II for product liability.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

August 4, 2011